IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| **JASON W. KIRK,** | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 3:20-cv-00540 |
| **TONY PARKER, et al.,** | ) ) | Judge Trauger |
| Defendants. | ) ) ) | |

## MEMORANDUM AND ORDER

Jason W. Kirk, an inmate of the Riverbend Maximum Security Institution in Nashville, Tennessee, has filed a *pro se* complaint under 42 U.S.C. § 1983 (Doc. No. 1) and an application for leave to proceed *in forma pauperis* (IFP). (Doc. No. 2.)

The case is before the court for ruling on the IFP application and for initial review pursuant to the Prison Litigation Reform Act (PLRA), 28 U.S.C. §§ 1915(e)(2) and 1915A, and 42 U.S.C. § 1997e.

### I. APPLICATION TO PROCEED IFP

Under the PLRA, 28 U.S.C. § 1915(a), a prisoner bringing a civil action may apply for permission to file suit without prepaying the filing fee required by 28 U.S.C. § 1914(a). The plaintiff has submitted an affidavit of poverty and a certification of the current and six-month average balances in his inmate trust fund account. (Doc. No. 2.) These submissions substantially comply with the requirements of Section 1915(a) and demonstrate that the plaintiff lacks the funds to pay the entire filing fee in advance. Accordingly, his IFP application (Doc. No. 2) is **GRANTED**.

Pursuant to 28 U.S.C. §§ 1915(b) and 1914(a), the plaintiff is nonetheless assessed the $350 civil filing fee. The warden of the facility in which the plaintiff is currently housed, as custodian of the plaintiff's trust account, is **DIRECTED** to submit to the Clerk of Court, as an initial payment, the greater of: (a) 20% of the average monthly deposits to the plaintiff's credit at the jail; or (b) 20% of the average monthly balance to the plaintiff's credit for the six-month period immediately preceding the filing of the complaint. 28 U.S.C. § 1915(b)(1). Thereafter, the custodian shall submit 20% of the plaintiff's preceding monthly income (or income credited to the plaintiff for the preceding month), but only when the balance in his account exceeds $10.00. 28 U.S.C. § 1915(b)(2). Payments shall continue until the $350 filing fee has been paid in full to the Clerk of Court. 28 U.S.C. § 1915(b)(3).

The Clerk of Court **MUST** send a copy of this order to the warden of the facility where the plaintiff is housed to ensure compliance with that portion of 28 U.S.C. § 1915 pertaining to the payment of the filing fee. If the plaintiff is transferred from his present place of confinement, the custodian must ensure that a copy of this order follows the plaintiff to his new place of confinement, for continued compliance with the order. All payments made pursuant to this order must be submitted to the Clerk of Court for the United States District Court for the Middle District of Tennessee, 801 Broadway, Nashville, TN 37203.

## II. INITIAL REVIEW

### A. PLRA Screening Standard

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the court must dismiss any IFP complaint that is facially frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. Similarly, Section 1915A provides that the court shall conduct an initial review of any prisoner complaint against a

governmental entity, officer, or employee, and shall dismiss the complaint or any portion thereof if the defects listed in Section 1915(e)(2)(B) are identified. Under both statutes, this initial review of whether the complaint states a claim upon which relief may be granted asks whether it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Applying this standard, the court must view the complaint in the light most favorable to the plaintiff and, again, must take all well-pleaded factual allegations as true. *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). Furthermore, *pro se* pleadings must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, *pro se* litigants are not exempt from the requirements of the Federal Rules of Civil Procedure, *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989), nor can the court "create a claim which [a plaintiff] has not spelled out in his pleading." *Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975)).

**B. Section 1983 Standard**

The plaintiff seeks to vindicate alleged violations of his federal constitutional rights under 42 U.S.C. § 1983. Section 1983 creates a cause of action against any person who, acting under

3

color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012). Thus, to state a Section 1983 claim, the plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution or laws of the United States, and (2) that the deprivation was caused by a person acting under color of state law. *Carl v. Muskegon Cnty.*, 763 F.3d 592, 595 (6th Cir. 2014).

## C. Allegations and Claims

The plaintiff names as defendants to this action the Commissioner of the Tennessee Department of Correction (TDOC) and the CEO of CoreCivic, the private contractor that manages certain TDOC facilities; the heads of federal and state law enforcement agencies, including the Tennessee Attorney General; members of the Tennessee House of Representatives Criminal Justice Committee; and the Wardens of all TDOC institutions and their internal affairs officers. (Doc. No. 1 at 1–3.) He sues all defendants in their individual capacities (*id.* at 4), seeking an award of damages and a wide range of injunctive orders (*id.* at 16–19) to remedy the alleged conspiracy among these officials to perpetuate and cover up the large-scale prison drug trade that is carried out over the state prison phone system. (*Id.* at 6.) He alleges that the 14 TDOC prisons aggregate between 1,000 and 1,500 drug transactions over the phone system every day, and that "[a]ll defendants listed have full knowledge of the prison drug trade," but "[n]one of them take action to fix the issue, some profit from it, and cover it up." (*Id.* at 7–8.)

As a consequence of the unimpeded prison drug trade, the plaintiff alleges that he is "at risk of cruel and unusual punishmen[t]," in violation of his "right to be protected from und[ue], unessessary [sic] violence." (*Id.* at 8.) He states that the defendants are deliberately indifferent "to the danger this culture places the plaintiff in, as well as other inmates and correctional employees."

(*Id.*) The plaintiff alleges that the inmates who are drug-addicted become desperate and violent when they cannot obtain those drugs, and that he is at risk of harm from such inmates. (*Id.*) He further alleges that inmates who are caught with drugs are only lightly punished, encouraging the prison drug culture. (*Id.* at 9.) He alleges that the majority of inmates who sell drugs are gang members classified into "Security Threat Groups" and that such groups are allowed to control the prisons' general-population housing units, despite a TDOC policy requiring that inmates with a Security Threat Group designation be housed in segregation. (*Id.* at 10–11.) Such control is maintained by threatening violence against any non-gang member (such as the plaintiff) who crosses them unless they receive payment of a "tax." (*Id.* at 10.) This arrangement is made possible by, but also contributes to, a shortage of properly trained prison staff. (*Id.* at 11–12.) In particular, the position of Internal Affairs officer is purposefully and woefully understaffed, "which places the plaintiff into a potentially vol[a]tile situation at any prison in the state." (*Id.* at 12.)

On March 2, 2020, the plaintiff "sent out an essay to all Defendants", detailing the operations of the drug trade in Tennessee prisons, but his essay (*see id.* at 28, 30–42) was ignored. (*Id.* at 12–13.) He states that the defendants "fail to investigate, fail to act, fail to prosecute," and that their indifference "helps to create a dangerous condition inside the prison system, which places the plaintiff at risk." (*Id.* at 14.) The plaintiff claims that "[e]ach one of these issues [is] a violation of the plaintiff's Eight[h] Amendment right to be free from cruel and unusual punishment." (*Id.*) He claims that he can prove the existence of a conspiracy between the Tennessee Attorney General and the heads of TDOC and CoreCivic to allow the prison drug trade to flourish, "resulting in a violent[,] out of control drug culture that places the plaintiff and other inmates like him in danger of assault, robbery and extortion." (*Id.* at 15.)

**D. Analysis**

It has long been evident that "drug smuggling and drug use in prison are intractable problems." *Overton v. Bazzetta*, 539 U.S. 126, 134 (2003). To establish standing under Article III of the Constitution to challenge officials' response to this problem, a plaintiff must establish an injury that is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting *Monsanto Co. v. Geertson Seed Farms*, 130 S.Ct. 2743, 2752 (2010)).

> Although imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is *certainly* impending. Thus, we have repeatedly reiterated that threatened injury must be *certainly impending* to constitute injury in fact, and that allegations of *possible* future injury are not sufficient.

*Id.* (citations and internal quotation marks omitted; emphasis in original).

The complaint in this case does not allege that the plaintiff has suffered any injury, physical or emotional, inflicted by a drug-dealing or drug-addicted inmate at any point during the past year, when the plaintiff alleges that "hundreds of drug transactions" were taking place every day. (Doc. No. 1 at 7.) Rather, the complaint asserts an intolerable risk of future harm at the hands of potentially violent inmates, as exemplified in the following hypothetical scenario:

> Drugs like heroin, crystal meth, and s[u]boxone have been shown to create or enhance an agitated state, paranoia, anxiety, and violence. Add these issues to the stress, aggravation, depression of being in prison. This creates a vol[a]tile, unpredictable inmate. When this above described inmate does not have a way of getting the drugs he is addicted to[,] this inmate will rob, extort, and assault other inmates to fund his drug habit. This places the plaintiff at risk [of] bodily harm from this inmate.

(*Id.* at 8.) The fact that the complaint provides this example of the risk the plaintiff faces but does not include allegations of specific incidents of violence, despite "hundreds of inmates being caught

6

with drugs in the last year" and "sixty to eighty percent of the inmate population [being] involved in the illegal drug trade" (*id.* at 9, 10), tells against the imminence of the threatened injury.

Even assuming that a pervasive risk of violence within the particular prison where the plaintiff is housed is sufficient to establish a concrete, particularized, and actual injury for purposes of his standing to sue, it does not appear to be sufficient to state a nonfrivolous claim for damages under the Eighth Amendment's prohibition of cruel and unusual punishment. In *Wilson v. Yaklich*, 148 F.3d 596 (6th Cir. 1998), the Sixth Circuit considered a similar claim based on the alleged failure of prison authorities to protect an inmate from the threat of gang violence. The court noted that Wilson had alleged two occasions when he was forced to do what prison gang members said, under threat of violence if he failed to comply, and that prison officials failed to intervene to protect him from "possible physical harm." *Id.* at 600. The Sixth Circuit described the Eighth Amendment's application to this scenario, as follows:

> The plaintiff asserts that his Eighth Amendment right not to be subjected to cruel and unusual punishment has been implicated by the defendants' failure to act in this case. Without question, prison officials have an affirmative duty to protect inmates from violence perpetrated by other prisoners. As the Supreme Court noted in *Farmer v. Brennan*, 511 U.S. 825, 833, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994), "[h]aving incarcerated persons with demonstrated proclivities for antisocial criminal, and often violent, conduct, having stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course." (Internal quotation marks and citations omitted.)
>
> Nevertheless, not all injuries suffered by an inmate at the hands of another prisoner result in constitutional liability for prison officials under the Eighth Amendment. Instead, the deprivation alleged "must result in the denial of 'the minimal civilized measure of life's necessities,'" *id.* at 834, 114 S.Ct. 1970 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981)), and, in prison condition cases such as the one presently before the court, the prison officials must exhibit deliberate indifference to the health or safety of the inmate. *Id.* Implicit in this standard is the recognition that the plaintiff must allege that he has suffered or is threatened with suffering actual harm as a result of the defendants' acts or omissions before he can make any claim with an arguable basis in Eighth Amendment jurisprudence.

7

*Wilson*, 148 F.3d at 600–01. The Sixth Circuit held that Wilson's allegations failed to meet the threshold requirement of asserting "actual harm," whether it be a physical or emotional injury, or even an injury resulting from "fear of assault at the hands of the prison gang," noting that "extreme deprivations are required to make out a conditions-of-confinement claim," as opposed to an excessive force claim. *Id.* at 601 (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). The court proceeded to quote approvingly from the Seventh Circuit's conclusion in *Babcock v. White*, 102 F.3d 267, 272 (7th Cir. 1996), as follows:

> However legitimate [the plaintiff's] fears may have been, we nevertheless believe that it is the reasonably preventable assault itself, rather than any fear of assault, that gives rise to a compensable claim under the Eighth Amendment. [A] claim of psychological injury does not reflect the deprivation of "the minimal civilized measures of life's necessities," *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271 ... (1991); *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S. Ct. 2392, 69 L. Ed. 2d 59 ... (1981), that is the touchstone of a conditions-of-confinement case. Simply put, [the plaintiff] alleges, not a "failure to prevent harm," *Farmer*, 511 U.S. [at 834], 114 S. Ct. 1970 ..., but a failure to prevent exposure to risk of harm. This does not entitle [the plaintiff] to monetary compensation. (Citation omitted.)

*Wilson*, 148 F.3d at 601.

In this case, as in *Wilson*, the plaintiff's claim for damages is not tied to any particular injury, but to an environment that increases the potential for such injury. It is thus based on "a failure to prevent exposure to risk of harm" which, under *Wilson*, cannot support a colorable damages claim.

As to the plaintiff's request for injunctive relief, it is clear "that a remedy for unsafe conditions need not await a tragic event" and that "inmates who plainly proved an unsafe, life-threatening condition in their prison" should not be denied injunctive relief "on the ground that nothing yet had happened to them." *Helling v. McKinney*, 509 U.S. 25, 33 (1993). But it is also clear that "[p]risons are by definition places where violent people are housed involuntarily" and

8

that "[a]ll prisons experience incidents of crime that exceed the levels of the outside." *McGhee v. Foltz*, 852 F.2d 876, 880 (6th Cir. 1988) (citing *Hudson v. Palmer*, 468 U.S. 517, 526 (1984)). Plaintiff's fundamental complaint is that prison officials are tolerating, or even encouraging, the widespread violation of state and federal criminal laws by their failure to enforce the internal policies of TDOC in any meaningful way, or to allocate staff and resources appropriately, and thus are creating undue risk for inmates and staff. He therefore asks the court to enjoin TDOC and CoreCivic officials to (1) increase the number of Internal Affairs and Security Threat Group officers at each state prison; (2) create a drug task force for each state prison; (3) enforce the TDOC policy provisions that apply to Security Threat Groups; and (4) create a "zero tolerance drug policy" that would apply to "all inmates found to be in possession of any drug or tobacco inside the Tennessee prison system." (Doc. No. 1 at 18–19.) In addition, Plaintiff seeks an injunctive order for the Tennessee Bureau of Investigation to create a department to oversee the TDOC, to enforce all applicable laws within the prison system, and to ensure prosecution of any inmate or prison employee who is found in possession of any drug or tobacco product. (*Id.* at 19.)

As laudable as the plaintiff's desire to reform the state prison system is, the alleged conditions of his confinement do not justify judicial intervention into the internal workings of state prison oversight, staffing, and administration. *See Rhodes v. Chapman*, 452 U.S. 337, 349–52 (1981) (finding that, in discharging duty to protect constitutional rights, courts "cannot assume that state legislatures and prison officials are insensitive to the requirements of the Constitution," nor can they award relief based on considerations that, though they may "reflect an aspiration toward an ideal environment for long-term confinement," "properly are weighed by the legislature and prison administration rather than a court"). Nor do the alleged violations of applicable TDOC policies and procedures support a claim to injunctive relief. *See Rimmer-Bey v. Brown*, 62 F.3d

789, 790–91 (6th Cir. 1995) (stating that mandatory language in prison regulations does not create a liberty interest protected by the due process clause). Moreover, just as this court may not ordinarily enjoin an ongoing state criminal prosecution, neither can it use its equity powers to order the state to investigate and prosecute alleged crimes that occur within the walls of its prisons. *See Trainor v. Hernandez*, 431 U.S. 434, 441 (1977) (noting that, "[b]eyond the accepted rule that equity will ordinarily not enjoin the prosecution of a crime, . . . there are basic concerns of federalism which counsel against interference by federal courts, through injunctions or otherwise, with legitimate state functions"); *see also Napier v. Baron*, 198 F.3d 246, 1999 WL 1045169, at *1 (6th Cir. Nov. 9, 1999) (holding that inmate "does not have a constitutional right to have a particular person criminally charged and prosecuted"); *Gresham v. Granholm*, No. 2:09-cv-231, 2010 WL 104700, at *3 (W.D. Mich. Jan. 7, 2010) (dismissing inmate's Section 1983 claim for refusal to investigate alleged crime by staff).

In sum, the plaintiff fails to state a viable claim for the monetary damages and injunctive relief he seeks. This action must therefore be dismissed.

### III. CONCLUSION

In light of the foregoing, the plaintiff's application to proceed IFP (Doc. No. 2) is **GRANTED**, and the $350 filing fee is **ASSESSED** in accordance with this order. This action is hereby **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), for failure to state a claim upon which relief can be granted. Because the complaint does not present any viable grounds for relief, the court further **CERTIFIES** that any appeal from this decision would not be taken in good faith. 28 U.S.C. § 1915(a)(3).

This is the final order in this action. The Clerk **SHALL** enter judgment. Fed. R. Civ. P. 58(b)(1).

It is so **ORDERED**.

_____
Aleta A. Trauger
United States District Judge